UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

     -v.-                                     No. S2 12 Cr. 863 (LAP)

KEVIN HENDERSON,

       Defendant.


**GOVERNMENT'S SENTENCING MEMORANDUM**


                                               PREET BHARARA
                                               United States Attorney for
                                               the Southern District of New York
                                             One Saint Andrew's Plaza
                                             New York, New York 10007

Brendan F. Quigley
Rahul Mukhi
Daniel B. Tehrani
Assistant United States Attorneys
    Of Counsel

## PRELIMINARY STATEMENT

Defendant Kevin Henderson ("Henderson" or the "defendant") is scheduled to be sentenced on April 13, 2015.  The Government respectfully submits this memorandum in advance of the sentencing proceeding and in response to the defendant's submission ("Def. Mem."), in which he seeks a sentence between 41 to 51 months' imprisonment.  (Def. Mem. at 1.)  The Government, the defendant, and the Probation Office agree that the applicable Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range is 151 to 188 months' imprisonment. Consistent with the Probation Office's recommendation, the Government respectfully requests that the Court impose a sentence within that Guidelines range.

## FACTUAL BACKGROUND

### I.      The Investigation and Offense Conduct

In or about November 2011, the New York Police Department ("NYPD"), Bronx Narcotics Division, began investigating an organization that was dealing large amounts of crack in the vicinity of a housing project called the Mott Haven Houses (the "Mott Haven Organization" or the "Organization").  The investigation was spurred by community complaints of rampant drug dealing and violence in the neighborhood.  The investigation centered on introducing undercover detectives ("UCs") to the dealers who were supplying and selling crack as part of the Mott Haven Organization.  Three UCs in particular made dozens of undercover drug buys over the course of the year-long investigation, and the NYPD ultimately identified the 26 members of the Organization that were charged in this case.  Each defendant participated in multiple crack sales to the UCs and many of these transactions were captured in video and audio recordings.  The sales took place both outside and inside of public apartment buildings.

The Mott Haven Organization was organized in a structure common to many narcotics conspiracies.  At the top were the suppliers and organizers who supplied and led the Organization.  Below them were the street-level dealers, who would sell crack directly to the crack customers.  Working along aside the street-level dealers were "steerers," who would find customers for the dealers in exchange for referral fees or for crack.  Some members of the Organization, like Henderson, were street-level dealers at certain times and steerers at other times.  On numerous occasions, the members of the Organization were captured working in tandem to sell crack to the UCs.

Henderson was a street-level dealer who was involved in seven sales or attempted sales of narcotics to undercover officers between November 2011 and May 2012.  During these transactions, six of which are detailed in the Presentence Report, PSR ¶¶ 35-40, Henderson was referred customers by steerers, sold on crack to UCs on his own and referred UCs to co-conspirators to purchase crack.

Overall, as Henderson admitted in his plea agreement, Henderson was responsible for distributing between 11.2 to 16.8 grams of crack cocaine.  PSR ¶ 5(b).

## II.    The Defendant's Criminal History

The defendant has 19 prior convictions, including six prior felony convictions for drug dealing.  PSR ¶¶ 70-88.  Those felony convictions have resulted in sentences as high as three-to-six years' imprisonment, PSR ¶ 78, and two of the convictions have been based on the defendant's attempts – on two separate occasions – to smuggle crack, heroin and/or marijuana into correctional facilities, PSR ¶¶ 81, 88.  In addition to his felony convictions for drug distribution, the defendant has also been convicted of four misdemeanors in which the defendant either sold or was found in possession of distribution-level quantities of narcotics.  PSR ¶¶ 75,

82, 83, 84.  One of the defendant's other misdemeanor convictions resulted from the defendant, acting in concert with others, firing a handgun at three people, PSR ¶ 79, and in another, Henderson and an accomplice pointed and fired a handgun near a subway station in the Bronx, PSR ¶ 72.  In total, the defendant's drug dealing and firearm-related conduct has spanned and regularly occurred over more than a decade.

By virtue of his multiple prior narcotics trafficking convictions, the defendant is a Career Offender under the Guidelines.  PSR ¶ 87.  Accordingly, Henderson is in Criminal History Category VI.  Moreover, as a result of the lengthy defendant's criminal history, he has 25 criminal history points, PSR ¶ 91, nearly double the minimum needed to place him in Criminal History Category VI, separate and apart from the Career Offender Guidelines.

## III.    The Indictment and Plea Agreement

The defendant, along with 25 co-conspirators who were also members of the Organization, was charged in a one-count indictment that was unsealed on December 13, 2012.  Count One charged the defendant with participating in a conspiracy to distribute, and possess with intent to distribute, crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.

On July 21, 2014, pursuant to a plea agreement (the "Plea Agreement"), the defendant pled guilty to a lesser included offense of participating in a conspiracy to distribute, and possess with intent to distribute, crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C).  Under the terms of the Plea Agreement, the parties stipulated that the defendant's Sentencing Guidelines range was 151 to 188 months' imprisonment.  In the PSR, the Probation Office also calculates 151 to 188 months as the applicable Guidelines range and recommends a sentence of 151 months' imprisonment.  PSR ¶ 120 & at 24.

3

**ARGUMENT**

**I.      The Career Offender Principles**

The defendant is a Career Offender under U.S.S.G. § 4B1.1 as the result of his multiple

prior felony drug dealing convictions.

The Career Offender provisions of U.S.S.G. § 4B1.1 implement the "Congressional

directive that career offenders be sentenced at or near the statutory maximum." *United States* v.

*Rogers*, 972 F.2d 489, 494 (2d Cir. 1992) (citing 28 U.S.C. § 994(h) ("Section 994(h)")).

Section 994(h) statutorily defines the term "career offender," and also directs the Sentencing

Commission to create guidelines assuring that a career offender be sentenced "to a term of

imprisonment at or near the maximum term authorized."  28 U.S.C. § 994(h).

To be clear, the Second Circuit has held that 28 U.S.C. § 944(h) does not *require* the

sentencing court to sentence a career offender at or near the maximum statutory penalty, which

in this case is 20 years' imprisonment.  *See United States* v. *Sanchez*, 517 F.3d 651, 664-65, 667-

68 (2d Cir. 2008) ("§ 994(h) does not make it mandatory for a sentencing court to sentence a

career offender to a prison term at or near the statutory maximum").  And the Court may impose

a sentence outside the range called for by the Career Offender Guideline.  *See id.*   However, as

the Second Circuit also made clear, "[t]his conclusion does not mean that we think a sentencing

court would be free to ignore the policy considerations reflected in § 994(h).  The court should . .

. take Congress's views on repeat offenders into account in determining the appropriate sentence

in light of the sentencing considerations set out in 18 U.S.C. § 3553(a)."  *Id.* at 665. [1]

---

[1]  *See also United States* v. *Preacely*, 628 F.3d 72 (2d Cir. 2010):

> [A] district may impose a sentence outside the range called for by
> the Career Offender Guideline.  The district courts are not,
> however, free to ignore the Career Offender Guideline.  The statute
> directing the Sentencing Commission to promulgate the Career

The legislative history of Section 994(h) confirms the Congressional intent that is clear on the face of the statute: Congress enacted Section 994(h) because it believed that "substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers."  S. Rep. No. 98-225, 98th Cong., 1st sess. 175 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3358.  In *United States* v. *Chartier*, 970 F.2d 1009 (2d Cir. 1992), the Second Circuit noted that the "legislative history of 994(h) reveals that the concern underlying this instruction was the belief that the vast majority of violent crimes and narcotics trafficking offenses are committed by a small minority of offenders."  970 F.2d at 1015.

The Second Circuit has also made clear that "[t]he legislative history to the Guidelines and the language of the career offender proviso do not differentiate among types of [drug] dealers and do not in any way advocate treating street dealing career offenders differently from other career offenders."  *United States* v. *Richardson*, 923 F.2d 13, 16 (2d Cir. 1991); *see also United States* v. *Mishoe*, 241 F.3d 214, 219 (2d Cir. 2001) ("[T]he Commission's career offender guideline, following the Congressional mandate, includes the criterion of two prior felony narcotics convictions, leaving no room for a generalized exception for 'street-level' drug selling." (citation omitted)).

## II.     The § 3553(a) Factors

The nature and seriousness of the offense, and the history and characteristics of the

---

Offender Guideline, 28 U.S.C. § 994(h), "reflects Congress's policy judgment that violent felonies and drug trafficking felonies generally warrant more severe sentences when committed by recidivists than when committed by first- or second-time offenders."  As such, district courts should "take Congress's views on repeat offenders into account in determining the appropriate sentence in light of" the section 3553(a) factors.

*Id.* at 79-80 (vacating sentence where the record was ambiguous as to whether the sentencing judge believed the career offender Guideline was mandatory) (citing and quoting *United States* v. *Sanchez*, 517 F.3d at 664-65, 668).

defendant, and the need to protect the public from further crimes of the defendant, among other reasons, make a sentence within the applicable Guidelines range of 151 to 188 months appropriate in this case.

First, Henderson committed a serious offense for which a significant sentence of imprisonment is appropriate. *See* 18 U.S.C. § 3553(a)(2)(A). He and his co-conspirators repeatedly sold drugs in and around public housing projects. This criminal activity indisputably had poisonous and disastrous effects on the community. Crack wreaks havoc on the lives of those who get addicted, and street-level distribution destroys neighborhoods and communities. Indeed, as noted above, this investigation was triggered, in part, because of complaints of rampant drug dealing and violence in the neighborhood.

Further, the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), also weigh in favor of a Guidelines sentence. As noted above, Henderson is a Career Offender under U.S.S.G. § 4B1.1. Henderson's criminal history, summarized above and detailed in the PSR, shows that Henderson is truly a career criminal. Since the age of 17, Henderson has repeatedly chosen to break the law, in particular by selling and smuggling narcotics. Henderson's prior interactions with law enforcement – which involve numerous convictions and at least one sentence greater than three years' imprisonment – have done little to deter him from continuing precisely the same criminal conduct.

Moreover, he has repeatedly chosen to break the law in the same area of the Bronx where he sold crack in this case. A significant sentence is therefore necessary to protect the public, and specifically the residents of the Mott Haven area of the Bronx, from further crimes of the defendant, who has, over the years, been a menace to that community as evidenced by his repeated criminal conduct.

In support of his argument for a below-Guidelines sentence, Henderson cites, among other reasons, certain childhood and economic difficulties as mitigating factors.  (Def. Mem. at 9-13.)  Without minimizing the seriousness of these issues, many persons go through similar difficulties—or worse—and do not become drug dealers, let alone repeat drug dealers who refuse to be deterred from that criminal conduct.  While the Court can take these factors into account, they do not support a below-Guidelines sentence in this case.

Nor would a sentence within the applicable Guidelines range result in unwarranted sentencing disparities among Henderson and his co-defendants.  Henderson compares himself to his co-defendant Ronald Bell (like most other Career Offender co-defendants who have been sentenced after Bell) in arguing that the Court should impose a sentence significantly below the Guidelines range.  (Def. Mem. at 27.)  While it is true that Bell was also a Career Offender, he is distinguishable from Henderson in several significant ways:

- Bell was involved in two crack sales to UCs during the course of the conspiracy, while Henderson was involved in numerous such transactions.

- While Bell had a serious Criminal History (12 prior convictions), Henderson has a significantly worse record (19 prior convictions and 25 criminal history points).

- While Bell's two sales to the UCs both took place in January 2012, Henderson sold or attempted to sell to UCs between November 2011 and May 2012, which spans a significant portion of the of the charged conspiracy.

Accordingly, a sentence within the applicable Guidelines range would not create an "unwarranted sentence disparit[y]" with Bell or any other defendants.  *See United States* v. *Fernandez,* 443 F.3d 19, 31-32 (2d Cir. 2006) ("[A]ssuming *arguendo* that 18 U.S.C. § 3553(a)(6) can support a reduced sentence designed to eliminate or diminish disparity between

the sentences imposed on co-defendants, those co-defendants would have to be similarly situated.").

## CONCLUSION

For the foregoing reasons, the Government submits that a sentence within the Guidelines is sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

Dated:  New York, New York
        April 8, 2015

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:   Brendan F. Quigley
      Rahul Mukhi
      Daniel B. Tehrani
      Assistant United States Attorneys
      (212) 637-2190/1581/2455