```
F4DQHENS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA

            v.                       12 CR 863 (LAP)
                                     Sentence
KEVIN HENDERSON

                  Defendant
------------------------------x

                                     New York, N.Y.
                                     April 13, 2015
                                     10:35 a.m.


Before:

                  HON. LORETTA A. PRESKA

                                     District Judge


                        APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
DANIEL B. TEHRANI
     Assistant United States Attorney

JOSHUA L. DRATEL PC
     Attorneys for Defendant Henderson
JOSHUA L. DRATEL
WHITNEY SCHLIMBACH
```

1              (In open court)
2              THE COURT:  United States against Kevin Henderson.
3              Is the government ready?
4              MR. TEHRANI:  Yes.  Good morning, your Honor.  Daniel
5     Tehrani for the government.  Your Honor, if I may, I'd like to
6     apologize to the Court.  Mr. Henderson's sentence was scheduled
7     for last week.
8              THE COURT:  Thank you very much.  I apologize for my
9     tardiness.  Is defense ready?
10             MR. DRATEL:  Yes Joshua Dratel for Mr. Henderson.
11    Also with me is Ms. Schlimbach from my office.
12             THE COURT:  Mr. Dratel, have you and your client had
13    time to review the presentence report?
14             MR. DRATEL:  Yes, we have.
15             THE COURT:  Is there any reason it should not be made
16    part of the record?
17             MR. DRATEL:  No, your Honor.
18             THE COURT:  Are there any objections to the
19    presentence report?
20             MR. DRATEL:  No, your Honor.  All of the objections or
21    corrections that we submitted to the draft report have been
22    incorporated in one form or another.
23             THE COURT:  Thank you.
24             With respect to the offense level computation:  I
25    accept the findings of the presentence report set forth at

1    paragraphs 58 through 68 which conclude that a total offense
2    level of 29 is appropriate.
3             With respect to the defendant's criminal history, I
4    accept the findings of the presentence report set forth at
5    paragraphs 69 through 94 which conclude that a Criminal History
6    category of I is appropriate.
7             Mr. Dratel, I have your sentencing submission dated
8    April 1.  I have the government's sentencing memorandum
9    dated -- I'm sorry -- it's a Criminal History Category VI.  I
10   think I misspoke.
11            We agree to that, don't we, counsel?
12            MR. TEHRANI:  Yes, your Honor.
13            MR. DRATEL:  Yes, your Honor.
14            THE COURT:  The government's sentencing memorandum is
15   dated April 8.
16            Are there any additional written materials I should be
17   looking at?
18            MR. TEHRANI:  Nothing from the government, your Honor.
19            MR. DRATEL:  No, your Honor.
20            THE COURT:  Mr. Dratel, would you like to speak on
21   behalf of Mr. Henderson?
22            MR. DRATEL:  I would, your Honor.  Thank you.
23            First, I just wanted to note that there were family
24   and friends who were able to be here Thursday.  Unfortunately,
25   I don't think -- I know there was one woman Helene Jones, who

F4DQHENS

wrote a letter and who actually took a bus overnight Thursday night to be here. She was not able to come back today. I just wanted the Court to be aware that at least two other people were here on Thursday; and if they are absent from the courtroom, the Court should not view this as any lack of interest in the sentence and the affection they have for Mr. Henderson.

THE COURT: Yes, sir.

MR. DRATEL: Obviously, as a matter of guidelines, the career offender guidelines apply. I think based not only on what the Second Ciruit has said many times but what the Court has done in this case, we look beyond that in terms of other defendants in this case. I think for Mr. Henderson there are compelling factors why a sentence in what would otherwise be his guideline range would be appropriate, reasonable and in this case just.

I am not going to go through the entirety of what is in my letter. Obviously, it was designed to be a comprehensive submission.

THE COURT: It certainly was.

MR. DRATEL: Thank you, your Honor.

The point being I want to focus on a couple of things that I think merit mention. One is that with respect to Mr. Henderson's background and his upbringing, from my perspective as a personal perspective, it's hard for me to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    fathom what it's like growing up in that environment.  I come
2    from a family where my parents loved me.  My siblings loved me.
3    They encouraged me.  I really don't know how people come back
4    from the kind of upbringing that Mr. Henderson has had on a
5    repeated basis.
6             It's not an excuse, but I think it is contextual.  I
7    think also in the context of his behavior and his conduct in
8    the past two years -- well, the two years I've known him, 18
9    months that I've known him, but almost three years now that
10   he's been in custody, including his state time, he has made
11   significant progress towards where he needs to be in the world
12   as a human being, as a father, and as a member of society.
13            I think he is a salvageable person.  I think what he
14   had done inside MDC says that as well in terms of not only what
15   he has done for himself but with respect to others, with
16   respect to the GED program.  The only reason I put in that
17   footnote about my other client, it's so hard that once the
18   other client left MDC, he was only there for a short period of
19   time, they just dropped it.  It's so difficult in these
20   facilities to remain any level of rehabilitation with progress.
21   So, I think that what he did is important in that regard.
22            I think that the time that Mr. Henderson has already
23   done which starts from June 2012, which is nearly three years
24   now, is not going to be credited towards his federal sentence.
25   If the Court does impose a concurrent sentence, it will only be

1    the last two months.  His sentence will expire in June of this
2    year, his state sentence.
3               So I would ask the Court to factor that into what
4    ultimate sentence the Court imposes here because, in essence,
5    he could serve -- if the Court that a total amount of
6    incarceration is appropriate, it will obviously not run
7    concurrent with these nearly 34 months that he has already been
8    in on his state case.
9               In that context, also, with respect to the *Mishoe* case
10   in the Second Ciruit in terms of what kind of commitments --
11   and I'm talking about jail commitments -- that people have had
12   before a career offender sentence is imposed.  This the longest
13   one for Mr. Henderson.  Obviously, it will be longer if the
14   Court imposes sentence.  I think that that also compels a
15   sentence within that 41-to-51 range simply because by the end
16   of the day that will be a substantial term of imprisonment.
17              He has already made significant adjustments and
18   progress, as I have noted and wrote in the letter.  I think
19   projecting into the future, there is not a need for an extended
20   sentence beyond that period of time looking at the fact that he
21   will not get credit having already done his time.
22              THE COURT:  How do we know that, Mr. Dratel?
23   Mr. Henderson earned his Criminal History VI fair and square
24   both by accumulating twice as many points as is required and
25   also by the nature of his prior convictions.

1            MR. DRATEL:  Yes.

2            THE COURT:   So how do we know?

3            MR. DRATEL:  Your Honor, I agree in the sense that we
4   don't know.  We don't know, but I would say that there are
5   couple of factors that the Court can look to to get confidence
6   at the level necessary to impose a sentence within that
7   guideline range.

8            One is the progress he has made while he's been in
9   custody, which, again, is the longest period of time, we are
10  looking again at the fact that he's going to do more and he is
11  going to continue his rehabilitation.  This is someone who had
12  already been in 16 months by the time I met him.  I would say
13  he never had an affect that did not recognize where he was, why
14  he was there, and what he needed to do.

15           When I said to him initially, "You know, your record"
16  -- before I could even say what it meant, he said to me, "Is
17  disgusting."  That's what he said to me.  It's understood, your
18  Honor.  We didn't make an argument that it overstates his
19  criminal history.  That would be inappropriate under the
20  circumstances.

21           THE COURT:   Candor becomes you, Mr. Dratel.

22           MR. DRATEL:  Also, if you look at what he went through
23  while in custody, it's not in our letter, but it's relevant in
24  this context, which is, while he was in custody at MDC and his
25  fiancée was suffering from kidney failure, he was trying to

1  arrange through BOP regulations, which is a chore in itself, to
2  try and see if he could be a match to donate a kidney.  Then
3  she passed away.  His daughter is out there, and he hasn't even
4  had a chance to see his daughter since then.  I don't think
5  it's matter of relationships; it's just a matter of the
6  magnitude of the tragedy for her family.
7       THE COURT:  Am I correct that I read that the
8  daughter's maternal grandmother is looking after her?
9       MR. DRATEL:  Yes.
10       So that has had a significant impact on him as well,
11  just in terms of his daughter and his desire to be a parent
12  essentially, if not fundamentally, in the context of what lies
13  ahead for him in his future.
14       Another is also this -- and it's remarkable, but it's
15  true that when we sat down, when he sat down with the probation
16  officer, that was the first time he ever revealed what he has
17  been living with for 25 years, 30 years.  I think that that is
18  an important aspect of recovery of the process of getting where
19  he needs to be as a human being to exist in a way that gives a
20  Court that confidence that the Court can err on the side -- not
21  err necessarily -- but decide on the side of something less
22  harsh rather than something more harsh.
23       There is also a lack of violence.  There is also the
24  level at which he operated.  He is a person with intelligence,
25  and one could say that cuts against him because why was he

1   doing what he was doing but at the same time he can be
2   productive.  He can be a good parent.
3            He has been an extraordinarily patient, understanding
4   and resigned client.  I mean resigned in the sense that he
5   knows why he's here.  He is remorseful and his letter is his
6   letter.  It's not my letter.
7            THE COURT:  Let me go back just one second, please.
8            MR. DRATEL:  Sure.
9            THE COURT:  You said non-violent.  I do note at
10  paragraph 72 the menacing conviction where it says that:
11  "Mr. Henderson and an accomplice pointed and discharged a 25
12  caliber handgun."Now, granted he was apparently 17-years-old at
13  the time, but we do have that fact here.
14           MR. DRATEL:  Yes, your Honor.  He was not in
15  possession of the weapon.  It goes back a long time, so I don't
16  have a documented version of the facts of that, but it was not
17  my understanding directed at anyone in particular and it was
18  the kind of situation that was obviously regrettable.  Again,
19  looking at the age, and the fact that he was not the person who
20  was in possession of the weapon or who fired the weapon I think
21  is a factor.
22           THE COURT:  All right.
23           MR. DRATEL:  A couple of other things:  One is that
24  general deterrence I know is a factor, but I know that there
25  are a range of sentences in this case.  There are a lot of

1  defendants to be sentenced.  I don't think general deterrence
2  should play a significant role in the context of the sentence
3  for Mr. Henderson.  Also, general deterrence as a concept is
4  one that is -- it's unverifiable.  It is also I think, to a
5  certain extent, not fair to Mr. Henderson getting time for
6  something that someone else did independently.
7          So I would ask the Court not to increase his sentence
8  based on that particular aspect, even the full range of what's
9  involved in this case, and I mean through the entirety of this
10 case, because I think all sentences provide general deterrence
11 and a think a sentence even within the guideline range is a
12 significant sentence and a substantial sentence, given the time
13 he has served and will not get credit for.
14         I want think I want to talk about, Judge, is with
15 respect to the government's letter comparing to Ronald Fell.
16 We are not asking for a Ronald Fell's sentence.
17         I don't know quite the particulars of Mr. Fell's
18 sentencing.  I have read the minutes.  I know that his Criminal
19 History Category while VI, he does not get points for fewer,
20 probably about half as many, we are asking for something that
21 is commensurate with Mr. Henderson's situation.  While there
22 are distinctions with respect to Mr. Bell, I don't think those
23 distinctions are of the magnitude that would require a sentence
24 or justify a sentence either at the Criminal History Guidelines
25 or even something not within the range of what we're talking.

Case 1:12-cr-00863-LAP   Document 460   Filed 09/03/15   Page 11 of 20     11
F4DQHENS

1    I think that even giving Mr. Bell a sentence, something like 41
2    to 51, accounting for the fact that he has already basically
3    served three years that won't be credited is comparable to
4    Mr. Bell in a way that would not create a disparity at all, but
5    one which is consistent with the Court's sentencing structure
6    in this case.
7            THE COURT:  So are several of the other individuals
8    who are in Criminal History Category VI, as you know, were also
9    street-level dealers involved in between three and 11 sales and
10   received 120 months.
11           MR. DRATEL:  Yes, your Honor.  What I would say to
12   that, I don't know their personal circumstances.  I don't
13   know -- certainly, I don't know that any of them had three
14   years in on a state sentence for basically the same conspiracy,
15   for part of the same conspiracy essentially, where it's not
16   going to be credited.  I don't know who they are.  I have not
17   spent 18, 19 months with them in a way that gives me confidence
18   that Mr. Henderson, again, is a salvageable person.
19           I hate these cases.  There is no solution that is
20   perfect.  There is no solution that anybody can be certain
21   about.  But I don't think the solution is an extended jail
22   term.  I don't see that as a solution, particularly for
23   Mr. Henderson.
24           And something significantly less than ten years is I
25   think what is appropriate in case, your Honor, and is still a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  substantial term that he will have sufficient time to continue
2  his rehabilitation, to continue to evolve in terms of turning
3  his remorse and his understanding of where he is into the kind
4  of commitment that once he's release will be the kind that we
5  can rely on.  I think he is getting there.  I think he has that
6  capacity.  I think given the nature of what's going on in this
7  country with respect to incarceration and sentences and the
8  attorney general himself, I think that is the appropriate thing
9  to do.
10           THE COURT:  Thank you.
11           MR. DRATEL:  Thank you, your Honor.
12           THE COURT:  Thank you.
13           Mr. Henderson, would you like to speak on your own
14  behalf?
15           THE DEFENDANT:  Yes.
16           THE COURT:  Would you do it now, please?
17           THE DEFENDANT:  I just want to apologize to the court
18  and to the community that I helped destroy, and I've change my
19  life just to be a better person.  Somebody out there that I
20  know loves me and I really want to be there for him.  That's
21  all I got.  Thank you.
22           THE COURT:  Thank you, sir.
23           Does the government wish to be heard?
24           MR. TEHRANI:  Unless the Court has any particular
25  questions, the government is prepared to rest on its

1   submission.  I would note that I do believe that a concurrent

2   sentence would be appropriate in this case given the nature of

3   the state sentence that Mr. Henderson is currently serving.

4          As Mr. Dratel noted, there is no way for the BOP to

5   retroactively count the time that he has already served to a

6   federal sentence or the extent your Honor were inclined to

7   agree that a concurrent sentence would be appropriate, the way

8   to do it would be under 5G1.3, which would be to announce the

9   total sentence that your Honor believes is appropriate and then

10  subtract out how much time he has served and announce a

11  sentence going forward from today of:  X to Y months.

12         THE COURT:  Yes, sir.  One other question, please.

13         What is the maximum period of supervised release that

14  may be imposed.

15         MR. TEHRANI:  Your Honor, it's life.

16         THE COURT:  Thank you.

17         That's close enough.

18         Anything else, Mr. Dratel?

19         MR. DRATEL:  No, your Honor.  Thank you.

20         THE COURT:  Thank you.

21         Counsel, as you have heard, I have calculated the

22  guidelines and certainly will take them into account.

23         The total offense level accurately reflects the nature

24  and circumstances of the offense.  With respect to the history

25  and characteristics of the defendant:  As I've noted,

1  Mr. Henderson has earned his Criminal Category VI fair and
2  square two different ways:  One by accumulating twice as many
3  Criminal History Points as is required to reach a Criminal
4  History Category of six.
5      "Secondly, as a result of the nature of his prior
6  convictions."
7      I will say though that disgusting, to use
8  Mr. Henderson's words, Criminal History record does not seem to
9  reflect accurately the person that Mr. Henderson is today.
10      In making that comment, I rely not only on what
11  Mr. Dratel said, but I rely on what Mr. Henderson has done
12  since he has been incarcerated.  As is set out in the
13  sentencing materials, Mr. Henderson has tutored others in
14  receiving their GED.  He's worked two jobs.  I did note that
15  his evaluations at the MDC -- which I can't lay my fingers on
16  right now -- but have him listed as outstanding in all of the
17  categories that are noted.
18      I also take into account Mr. Henderson's letter and
19  the letters of others acknowledging his wrongful conduct in the
20  past, accepting responsibility for it, and recognizing the
21  importance of family and friends.  So I certainly take all of
22  those factors into account in considering the characteristics
23  of this defendant.
24      With respect to the paragraph two factors, certainly
25  there is a need for an incarceratory sentence to reflect the

seriousness of the offense and to promote respect for the law. My concern, however, is that the guideline is apparently, in my view, greater than what is required to achieve this goal.

Paragraph B talks about public deterrence, and certainly an incarceratory sentence which required there.

As to paragraph C: The need to protect the public from further crimes of this defendant.

Based on Mr. Henderson's criminal history, one would think that an exceeding lengthy time of incarceration is required to protect the public from future crimes of Mr. Henderson.

However, in light of what he has done while incarcerated, his own letter and the letters of others, a guideline sentence appears to me to be greater than what is required to achieve this goal.

With respect to paragraph D: The need for educational or vocational training, I think those factors are of less import in this case than in others.

I've read the paragraph 3, 4 and 5 factors and have considered them.

With respect to paragraph 6, the need to avowed unwarranted sentencing disparities: As is apparent from the conversations that Mr. Dratel and I have had, I am aware of the sentences given to other similarly situated individuals in this case.

1           To the extent that there is a disparity perceived
2   here, it is warranted, in my view, because of the
3   rehabilitation Mr. Henderson has undertaken even since his
4   incarceration.
5           Taking all of those factors into account counsel, it
6   would normally be my view that a sentence of 51 months is
7   appropriate to meet the sentencing factors.  In light of the
8   fact that Mr. Henderson has spent 34 months incarcerated now in
9   the state on a crime that is part of the conspiracy of
10  conviction here, that time should be subtracted under Section
11  5G.1.3.  Accordingly, it is my intention to impose a sentence
12  of 17 months from today on Mr. Henderson.
13          It is my intention to impose a period of ten years of
14  supervised release.
15          It is my intention to impose a substance abuse program
16  and alcohol after care program, and to impose the search
17  provision as special conditions.
18          Mr. Dratel, what is your view of vocational counseling
19  and/or training?
20          MR. DRATEL:  Whatever is available, your Honor.  It
21  would be appreciated.
22          THE COURT:  It is my intention to impose vocational
23  consultation and training.  It is not my intention to impose a
24  fine on a finding that Mr. Henderson is not able to afford a
25  fine at this point.

1              Is the government seeking forfeiture or restitution
2     here?
3              MR. TEHRANI:  No, your Honor.
4              THE COURT:  Thank you.
5              It is my intention to impose the $100 special
6     assessment.
7              Counsel, is there any reason why should a sentence
8     should not be imposed?
9              MR. DRATEL:  No, your Honor.
10             MR. TEHRANI:  No, your Honor.  I just ask because I
11    want it to be crystal clear that you intend the sentence to be
12    concurrent with the state sentence.
13             THE COURT:  Yes.  Thank you.
14             Mr. Henderson.
15             THE DEFENDANT:  Yes.
16             THE COURT:  You are sentenced, sir, to 17 months of
17    incarceration.  The Court intends it to be concurrent with the
18    state sentence.  That is 17 months from today.  Following your
19    release, sir, you will spend ten years on supervised release.
20    The reason for that, sir, is to see if you put your money where
21    your mouth is.  We will keep an eye on you, and if you do as
22    you say, then you benefit.  If you don't, then we will have a
23    do-over here.  Do you understand what I'm saying, sir?
24             THE DEFENDANT:  Yes, ma'am.
25             THE COURT:  During the period of supervised release,

1    you will comply with all of the standard and conditions of
2    supervised release.  Among them are that you not commit another
3    federal, state or local crime; you not illegally possess a
4    controlled substance, and you may not possess a firearm or
5    other destructive device.
6              In addition to those and all of the other standard
7    terms and conditions of supervised release, during that period
8    you will participate in a program approved by the probation
9    officer for substance abuse.  That program will include testing
10   to determine whether you've gone back to the use of drugs.
11             The Court authorizes the release of available drug
12   treatment evaluations and reports to the substance abuse
13   treatment provider as approved by the probation officer.
14             In addition, sir, during that period, you will
15   participate in an alcohol after-care program, sir, as required
16   by the probation officer.  You might be required to pay some or
17   all of the costs of both of those programs depending on your
18   ability to pay and the availability of third-party payment.
19             In addition, sir, during that period, you will submit
20   your person, residence, place of business, vehicle, electronic
21   devices and any other premises under your control to a search
22   on the ground that the probation officer has reasonable belief
23   that contraband or evidence of a violation of the terms and
24   conditions of your release can be found there.
25             Such a search plus be conducted at a reasonable time

1    and in a reasonable manner.  Failure to submit to such a search

2    might be grounds for revoking your supervised release.

3             It will be your obligation to inform other resident's

4    of the premises or the electronic devices that they might be

5    subject to a search under this condition.

6             Finally, sir, during the period of your supervised

7    release, you will participate in vocational and employment

8    training programs as approved by the probation officer.

9             As I mentioned, I do not impose a fine or any

10   forfeiture but must impose and do impose the $100 special

11   assessment.  That should be paid promptly.

12            It is my duty to inform you, sir, that unless you have

13   waived it, you might have the right to appeal this sentence and

14   might have the right to appeal in forma pauperis, which means

15   as a poor person, with the waiver of certain fees and expenses.

16            Counsel, is there anything further?

17            MR. TEHRANI:  Your Honor, government moves at this

18   time to dismiss all open counts against Mr. Henderson.

19            THE COURT:  So ordered, Mr. Dratel.

20            MR. DRATEL:  Nothing further, your Honor.

21            THE COURT:  Mr. Henderson, no let's see if you do can

22   do it.  As I medication, you earned those criminal history

23   points fair and square, but now you've got do what you tell me

24   you're going to do.

25            THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  You have a daughter to take care of.

2          I noted in the sentencing materials that you have been

3    writing to her even though she hasn't been able to come to

4    visit you.  Keep doing that.  It's very important.  It's

5    important for girls how their dads treat them.  So you keep up

6    that good work.

7          I will tell you again:  The reason you have ten years

8    of supervised release is to see if you can do what you say you

9    can do.  You are welcome to come visit any time, but I don't

10   want you sitting next to Mr. Dratel there, and making a liar

11   out of him.

12         Do you understand?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  Yes, sir.  Good luck, sir.  Counsel, thank

15   you for your assistance.  Thank you, Mr. Marshal.

16         (Adjourned)